# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

DEBBIE L. WILSON,                )
                                 )
    Plaintiff              )
                                 )
v.                               )     No. 2:10-cv-358-GZS
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
    Defendant              )

## REPORT AND RECOMMENDED DECISION[1]

This Supplemental Security Income ("SSI) appeal raises three issues: whether the administrative law judge was required to issue the subpoena requested by the plaintiff, whether the administrative law judge's evaluation of the plaintiff's credibility is supported by substantial evidence, and whether the administrative law judge's conclusion that there were jobs that existed in significant numbers in the national economy that the plaintiff could perform is supported by substantial evidence. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 416.920, *Goodermote v. Secretary of Health & Human Servs.*, 690 A.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from major depressive disorder, an anxiety-related disorder, and mild posttraumatic stress disorder,

---

[1] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 14, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 2-3, Record at 9-10; that the plaintiff had no past relevant work, Finding 4, *id*. at 14; that, given her age (27 on the date the application was filed), limited education, and residual functional capacity ("RFC"), there were jobs existing in significant numbers in the national economy that the plaintiff could perform, Findings 5-8, *id*. at 14-15; and that, therefore, the plaintiff had not been under a disability, as that term is defined in the Social Security Act, at any time from the alleged date of onset, March 21, 2006,[2] to the date of the decision, Finding 9, *id*. at 15. The Decision Review Board failed to complete its review of the decision in the time allowed, making it the final determination of the commissioner. 20 C.F.R. § 405.420(a)(2); *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence

---

[2] Finding 9 notes an alleged date of onset of March 21, 2006, Record at 15, but the administrative law judge's decision earlier notes a date of March 6, 2006. *Id*. at 7, 9. Nothing turns on this discrepancy.

in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## Discussion

### A. Subpoena

The plaintiff contends that she had an absolute right to a subpoena requested twice by her attorney at the hearing before the administrative law judge for Edward Quinn, Ph.D., a psychologist who examined her on behalf of the state disability service, so that her attorney could cross-examine him in person. Statement of Errors ("Itemized Statement") (Docket No. 10) at [7]-[14]. She cites *Lidy v. Sullivan*, 911 F.2d 1075 (5th Cir. 1990), in support of this position and asserts that "[t]his Court should adopt the 5th Circuit's reasoning in *Lidy*." *Id*. at [11]. But, this court has already declined to do so, *Morin v. Apfel*, No. CIV. 98-415-P-C, 1999 WL 33117165, at *5 n.6 (D. Me. May 17, 1999), pointing out that the First Circuit case cited by the *Lidy* court as being in accord with its ruling, *Figueroa v. Secretary of Health, Educ. & Welfare*, 585 F.2d 551 (1st Cir. 1978), in fact was not.

In addition, one of the three circuit courts of appeal cited by the plaintiff as having adopted the *Lidy* interpretation no longer follows it. In *Passmore v. Astrue*, 533 F.3d 658 (8th Cir. 2008), the Eighth Circuit said:

> The Fifth Circuit has "read [*Richardson v.*] *Perales*[, 402 U.S. 389 (1971)] as conferring an absolute right to subpoena a reporting physician." *Lidy v. Sullivan*, 911 F.2d 1075, 1077 (5th Cir. 1990). However, the agency's regulations relevant in *Perales* provide:
> 
> > *When it is reasonably necessary for the full presentation of a case*, an administrative law judge or a member of the Appeals Council may, on his or her own initiative or at the request of a party, issue subpoenas for the appearance and testimony of witnesses and for the production of books, records, correspondence, papers, or other documents that are material to an issue at the hearing.

> 20 C.F.R. §§ 404.950(d)(1), 416.1450(d)(1) (emphasis added). Because the regulations provide the ALJ discretion to issue a subpoena when "reasonably necessary for the full presentation of a case," the regulatory right to cross-examine is qualified and not absolute. Therefore, we conclude that *Perales* does not afford social security claimants an absolute right to cross-examine.

*Id*. at 661-62.

Here, the attorney for the plaintiff asked the administrative law judge at the outset of the hearing to subpoena Dr. Finney.

> Exhibit 14F is an exam report by Ed Quinn [phonetic] and I object to its admission absent a subpoena with him present and available to testify. The grounds for that is that his, the opinions are hostile to or negative to the claim, adverse to the claimant, and I need an opportunity to examine him. I think you need an opportunity to examine him to be able to evaluate the appropriate weight that should be given to his opinion[.]

Record at 40. The administrative law judge ruled "I'm going to admit the exhibit." *Id*. Close to the end of the hearing, the following colloquy took place:

> ATTY: Your honor, I have some other questions, but I want to renew my objection to the, to the admission of Dr. Quinn's report, 14F.
> ALJ: So[,] Mr. Benoit, you're actually suggesting that I call Dr. Quinn in so that he can respond to Ms. Wilson's charges that this is how the exam proceeded and that she spent only 15 minutes there and did not complete the entire exam?
> ATTY: The comments that he makes about malingering are not explained and they seem to contradict –
> ALJ: I think that they are supported by his statement that she took testing which suggested that some of her symptoms were, fell within the –
> ATTY: That's right. But those symptoms –
> ALJ: malingering range.
> ATTY: Yes, that's right. But those symptoms –
> ALJ: And that's objective, isn't it, Mr. Benoit?
> ATTY: Those symptoms are, well, those symptoms are not disclosed. What he's relying on is not disclosed in the report. Without you knowing that, it's virtually impossible for you to know whether that is a reliable conclusion or not. Can it, it doesn't appear that it was done in written form, at least from what we've heard so maybe it was, maybe it wasn't. But you don't have the –

> ALJ: The report are –
> ATTY: You don't have what's behind –
> ALJ: The reports certainly would suggest that it was a much longer appointment than 15 minutes and there's no indication in the report that Ms. Wilson departed before any of the psychological evaluation was completed. So are you suggesting that I call Dr. Quinn in so that I can resolve the conflict between Ms. Wilson's testimony and what appears to be a complete psychological evaluation in the record?
> ATTY: Yes, Your Honor.
> ALJ: I'll take that under advisement.

Record at 69-70.

Several courts have agreed with the Eighth Circuit in rejecting the *Lidy* court's reading of *Perales*, in opinions more recent than the three cases cited by the plaintiff. Itemized Statement at [11]. For example, in *Gresham v. Astrue*, No. 3:06-cv-0099-JAJ, 2007 WL 3208554, at *9 (S.D. Iowa Sept. 28, 2007), the court held that there is no absolute right to a subpoena for the attendance of the author of a pre-hearing report when the report is provided to the claimant before the hearing and the claimant is allowed to rebut the allegations in the report at the hearing; in *Dolan v. Barnhart*, Civil Action No. 2:03-0208, 2005 WL 5865347, at *15 (S.D.W.Va. Dec. 7, 2005), the court held that "[t]he Claimant does not have an automatic right to subpoena a witness"; and, in *Hughes v. Apfel*, No. NA 99-97-C H/G, 2000 WL 684270, at *3 (S.D.Ind. May 24, 2000), the court noted that the Seventh Circuit had found that *Perales* did not require issuance of a subpoena "simply upon demand." The burden that would be imposed upon the Social Security benefit application process, with its many thousands of hearings per year, by a policy of providing subpoenas for in-person testimony by medical professionals upon a claimant's demand should be obvious.

The plaintiff argues, in the alternative, that she was entitled to the requested subpoena under 20 C.F.R. § 404.940(d)(1). Itemized Statement at [12]-[14]. She attempts to distinguish this case from this court's decision in *Morin,* where an administrative law judge's denial of a

5

plaintiff's request to subpoena a consultative examining psychiatrist was upheld because the administrative law judge gave adequate reasons why the subpoena was not necessary to a full presentation of the plaintiff's case. *Morin*, 1999 WL 33117165, at *5. Here, the administrative law judge gave no reason for his denial of the plaintiff's requests.

But, before reaching the merits of an argument based on 20 C.F.R. § 416.1450(d)(1), the applicable regulation in this SSI appeal, a threshold issue must be addressed. In the instant case, there is nothing in the record to suggest that the plaintiff's attorney complied with the requirement of section 1450(d)(2) that

> [p]arties to a hearing who wish to subpoena documents or witnesses must file a written request for the issuance of a subpoena with the administrative law judge or at one of our offices at least 5 days before the hearing date. The written request must give the names of the witnesses or documents to be produced; describe the address or location of the witnesses or documents with sufficient detail to find them; state the important facts that the witness or document is expected to prove; and indicate why these facts could not be proven without issuing a subpoena.

20 C.F.R. § 416.1450(d)(2). This omission alone is enough to reject the plaintiff's arguments on this issue.[3] *Sulley v. Astrue*, No. 8:08CV297, 2009 WL 703927, at *9 (D. Neb. Mar. 16, 2009) (no abuse of discretion by ALJ who did not inform plaintiff in writing of reasons why she denied request to subpoena treating physician when plaintiff did not state important facts doctor's testimony would provide nor explain why these facts could not be proved otherwise).

---

[3] At oral argument, counsel for the plaintiff contended that her previous lawyer had complied with this regulation because he requested in writing a subpoena for Dr. Quinn more than five days "before the second hearing," citing page 456 of the record. From all that appears in the record, however, the initial hearing, held on February 22, 2010, Record at 39, was continued only because the plaintiff's lawyer objected to the vocational expert who was present at that hearing and whose testimony the administrative law judge intended to receive. *Id.* at 84. There was no way before that hearing began that the attorney for the plaintiff could have known that the hearing would be continued. The letter cited at oral argument is dated February 23, 2010, *id.* at 456, the day after the original day of the hearing, and the continued hearing was held on April 1, 2010, *id.* at 35, more than five days thereafter. On these facts, the two days were not two hearings; the second day was clearly a continuation of the hearing convened on the first day, and the continuation was caused only by the action of the plaintiff's then-attorney. Under these circumstances, I conclude that the subpoena request did not comply with the regulation. I note also that the question of Dr. Quinn's conclusions was not addressed during the second day of the hearing. *Id.* at 28-35.

While the manner in which the administrative law judge handled the request for a subpoena for Dr. Quinn in this case was not optimal, the plaintiff's failure to comply with the applicable regulation and the fact that she was allowed to present argument and evidence in opposition to Dr. Quinn's report mean that she is not entitled to remand on this basis.

### B. Credibility

The plaintiff next asserts that "[t]he ALJ's conclusion that the plaintiff is not credible is a conclusion in search of supporting facts." Itemized Statement at [14]. She contends that the administrative law judge based this conclusion on five specific facts, each of which she challenges. *Id*. at [14]-[20].

With respect to the plaintiff's credibility, the administrative law judge actually concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Record at 13. However, earlier in his opinion, he also said that he "gives the claimant's subjective complaints no weight at all" because the plaintiff "has difficulty telling the truth" and "the record suggests that the claimant continues to lie." *Id*.

The plaintiff sets out the following five "facts" as support allegedly relied upon for the administrative law judge's credibility finding:

1. "Contrary to the statement by the Plaintiff on her admission to the Oxford County Mental Health Services Crisis Stabilization Unit that she believed she had been diagnosed with 'paranoid schizophrenia,' she was not psychotic during her stay at the Oxford County Mental Health Services Crisis Stabilization Unit and was able to socialize with staff and others."

2. "Based on Dr. Quinn's report, the Plaintiff is a malingerer."

7

3. "She only had sporadic mental health treatment until March 14, 2007."

4. "The Plaintiff has difficulty telling the truth because one of her goals set forth in Exhibit 1E/19 (Tr. at 290) is not to lie to the staff at Averill High School."

5. "The ALJ contends that contrary to the Plaintiff's statements, she has continued to abuse alcohol."

Itemized Statement at [14]-[19]. It is not clear to me from the opinion that the administrative law judge actually relied on all of these observations to support his credibility determination, but, nonetheless, I will address each of them to assess the plaintiff's contention that the opinion may be so interpreted.

*1. Paranoid Schizophrenia*

The administrative law judge said the following on this topic:

> The claimant was seen at the Oxford Mental Health Crisis Stabilization unit in June 2006. She came for treatment of suicide ideation and reported she had not been on medication or treatment for a psychiatric condition. She was housed on the unit for several weeks and was assisted in finding shelter and applying for Maine Care. The claimant was also coached to look for work. During the time she was there, she applied for but did not receive a job at Dunkin Donuts. Caseworkers there were able to find her a place at a shelter in Auburn. The claimant was diagnosed with several psychiatric disorders including paranoid schizophrenia (because the claimant mentioned she had a history of the same). Despite this, the claimant was not psychotic at any time during her stay at Oxford. She was also noted to socialize well with the staff and other patients and was able to sleep well, despite her complaints of problems sleeping (Ex. 6F).

Record at 12.

The plaintiff challenges this description of some of her medical records because she "never claimed to be psychotic and psychosis is a different and completely separate diagnosis from paranoid schizophrenia." Itemized Statement at [15]. First, the quoted passage cannot reasonably be construed to assert that the plaintiff claimed to be psychotic at the relevant time.

8

Second, psychosis is a mental and behavioral disorder that is divided into major classifications, one of which is the schizophrenias. *Stedman's Medical Dictionary* (27th ed. 2000) at 1478. Thus, the two terms are not "different and completely separate diagnos[e]s." Itemized Statement at [15].

The plaintiff goes on to contend that "it is clear" that she uses the word "paranoid" to mean something different from the medical diagnosis, *id.*, but I do not see how this makes the quoted passage from the administrative law judge's opinion incorrect in any way. She also points out that she has been diagnosed by a licensed clinical social worker "with P[ost] T[raumatic] S[tress] D[isorder] with likely schizoid features." *Id*. This diagnosis, which is not made by an acceptable medical source, 20 C.F.R. § 416.913(a), appears at page 535 of the record. Again, I do not see how this entry, if the court may even consider it, makes incorrect the quoted passage from the administrative law judge's decision.

## 2. Dr. Quinn's Report

Here, the plaintiff refers to her contention that Dr. Quinn's report should not have been included in the record, because she was not given the opportunity to cross-examine him in person. Itemized Statement at [15]-[16]. She also asserts that Dr. Quinn "fails completely to address or discuss the opinions of all of the other treating psychological counselors, the consultative examiner, Dr. Crockett, and the Plaintiff's special education professionals, all of which disagree with his opinion." *Id*. at [16]. She refers directly only to the report of Dr. Crockett and school records stating that she "makes strong efforts to do her work." *Id*. at [17].

First, I have rejected the plaintiff's claim that she was entitled to compel Dr. Quinn's attendance at the hearing so that she could cross-examine him. The administrative law judge did not err in admitting his report.

9

Again, the administrative law judge appears to be merely reciting Dr. Quinn's findings in the relevant section of his opinion, Record at 12, rather than relying on those findings as the basis for his evaluation of the plaintiff's credibility. However, if the opinion could reasonably be read to so rely, Dr. Quinn was not required to address or discuss the opinions of other individuals who might have examined the plaintiff at other times. It is the role of the administrative law judge to make those comparisons. The plaintiff's arguments in this section of her itemized statement goes, at best, to the weight to be accorded Dr. Quinn's opinions rather than their admissibility. The administrative law judge's evaluation of those opinions, to the extent that it is displayed in his written opinion, is well within the boundaries of his role,

### 3. Sporadic Mental Health Treatment

The administrative law judge observed that

> [t]he claimant has had only sporadic treatment for her mental impairments during the relevant time. In March 2007, she attended a session at Tri-County Mental Health Center. However, she failed to attend any additional sessions (Ex. 30F pg. 13). She returned in August 2007 after being arrested on two warrants. She claimed to be suicidal and was taken for an evaluation to consider her safety in jail. She was cleared for jail and was taken away by the police (Ex. 30F pg. 6). In July 2008, the claimant began to experience feelings of depression. She discussed these with her physician who started her on Celexa. The claimant was advised to start counseling (Ex. 24F pg. 6). The claimant complained of depression and anxiety in April 2009. However, she explained she needed to be evaluated in conjunction with her disability application. . . . The claimant went to Tri-County Mental Health Center in July 2009. She again attended one session and was then discharged. She lost her Maine Care and attended only one session before being discharged from treatment again (Ex. 34F). The claimant returned for treatment in November 2009 and part of her treatment plan was to attend sessions regularly (Ex. 34F).

Record at 13. This is a considerably more detailed review than that set out by the plaintiff in contending that the administrative law judge found that "she had only sporadic mental health treatment until March 14, 2007." Itemized Statement at [17].

The plaintiff asserts that the administrative law judge made the quoted statement set out in the preceding sentence. *Id.* He did not. She asserts that the administrative law judge "ignores the fact that for many periods of time between 2005 and March 2007, the Plaintiff did not have Maine Care and thus did not have the money needed to get into a sustained mental illness treatment relationship." *Id.* at [17]-[18]. To support this assertion she cites the record of her own statement in a "Tri-County Mental Health Services March 14, 2007 assessment" that her "MaineCare was discontinued two years ago and [she] has been without medication." *Id.* at [18].

Even interpreting this entry as the plaintiff suggests, she alleged that her disability began on March 6, 2006, Record at 7, making only the second of the claimed two years without MaineCare coverage relevant here. In addition, the administrative law judge's recitation of sporadic treatment begins with March 2007, *id.* at 12, making the only record evidence cited by the plaintiff irrelevant to any evaluation of the administrative law judge's possible reliance on this factor in assessing the plaintiff's credibility.

Finally, even if the plaintiff's argument on this point were correct, this is only one of five reasons identified by the plaintiff as being used by the administrative law judge to support his credibility finding. The presence of one or more other reasons that is not erroneous would make this a harmless error.

*4. Difficulty Telling the Truth*

The plaintiff presents this alleged reason for the administrative law judge's credibility finding as follows: "The Plaintiff has difficulty telling the truth because one [of] her goals set forth in Exhibit 1E/19 (Tr. at 290) is not to lie to the staff at Averill High School." Itemized Statement at [18]. This is not a fair characterization of the administrative law judge's finding, which states in relevant part:

> The undersigned has determined the claimant has difficulty telling the truth, which is indicated, by one of the claimant's short-term goals that she not lie to the staff (Ex. IE pg. 19). However, the record suggests that the claimant continues to lie. For instance[,] the claimant consistently insists she is pregnant. She had a negative pregnancy test followed by at least four instances in which she reported she was pregnant including one statement that she was pregnant with twins (Ex. 16F pg. 26; 14F; 17F pg. 37; 30, 34 and 16F pg. 20). The undersigned also questions the claimant's assertion that she delivered a child in her teens (See Ex. B6, 12F pg. 21). In addition, in July 2008, the claimant threatened suicide simply to avoid going to jail.

Record at 13.

With respect to the single instance highlighted by the plaintiff, the entry in her school records to which the administrative law judge referred provides as follows, under the heading "Short-term goals":

> Debbie will not lie to staff. Progress toward this goal will be monitored by . . . T.L Program Manager and T.L. Staff. They will utilize the motivational teaching system, and set up strategies to help Debbie understand consequences of lying, and help her to be more direct to staff. Progress will be measured by whether Debbie has earned fewer consequences for lying, and whether she has earned fewer B[ehavioral] M[odification] T[echnique]s for this behavior.

Record at 290.

The plaintiff cites later findings from her school records that have no relevance to this entry, and, because, in her view, "[t]hese reports of the Plaintiff's P[upil] E[valuation] T[eam] team do not mention or state that the Plaintiff is lying to them[,]" the reports "prove that the Plaintiff had complied with her previously stated goal of not lying to the staff." Itemized Statement at [18]-[19]. To the contrary, the absence of reference to lying in reports about the plaintiff's academic performance (as opposed to her social performance that is addressed in the excerpt quoted above) proves nothing about whether the plaintiff continued to lie to school staff after her short-term goals were set.

12

Even if the plaintiff were correct about this issue, however, any error is harmless given the other evidence of lack of honesty cited by the administrative law judge and not challenged by the plaintiff.

### 5. *Use of Alcohol*

The plaintiff states this alleged reason as follows: "The ALJ contends that contrary to the Plaintiff's statements, she has continued to abuse alcohol." *Id*. at [19]. The administrative law judge's opinion includes the following paragraph:

> In addition, there is still the issue of substance abuse. The claimant has consistently stated she is abstinent from all substances. In an assessment dated March 14, 2007, she stated that she was abstinent from alcohol since October 2006. Yet, on March 14, 2007 she checked the amount of alcohol use as 3+ alcohol drinks daily within the last year (chronic) (Ex. 30F pg. 30).

Record at 13.

The plaintiff speculates that her response to the question about alcohol consumption "within the last year" assumed that the question referred to the last year in which she was drinking. Itemized Statement at [19]. There is no way to confirm this suggestion. The plaintiff also contends that the facts, that a licensed clinical social worker diagnosed her at that time with PTSD and a mood disorder without mentioning substance abuse as "a material factor" and that the administrative law judge "does not make that finding," require the conclusion that the paragraph quoted above is "without foundation." *Id*. at [20].

I reject the contention that the absence of subsequent mention of substance abuse or the fact that the administrative law judge did not find that substance abuse was a material factor in the plaintiff's disability requires the conclusion that the administrative law judge's brief discussion of substance abuse is such a serious error that it alone requires remand. The

administrative law judge's interpretation of the entries on the form is at least as supportable as the interpretation proposed by the plaintiff.

In any event, as I have noted previously, even if the plaintiff is correct with respect to this alleged reason given by the administrative law judge to support his credibility analysis, there are several other reasons identified by the plaintiff that are not erroneous, such that any such error would be harmless.

### C. Step 5 Determination

Finally, the plaintiff contends that the record evidence requires that the administrative law judge find that there are no jobs in the national economy that she can perform. Itemized Statement at [20]-[22]. She lists the following evidence that she contends compels this finding: she struggles with understanding and applying concepts; she has difficulty with processing and short-term memory; she has many gaps in learning and requires individual help and modification of assignments; and, she often needs extensive individual help and extended time to complete tasks. *Id*. at [20]-[21]. All of this evidence comes from her high school records, *id*. at [21]; the plaintiff at the date of alleged onset was 26 years old, Record at 14, many years after the date of those records. Record at 272.

The plaintiff also relies on symptoms and stressors that she reported to Dr. Crockett. Itemized Statement at [21]. But, Dr. Crockett found that the plaintiff

> could work in a proper environment, that she would need to be trained, but that she could do routine tasks, that she is fully capable of following one-step and two-step directions, and that she has the attention and concentration necessary to work consistently.

Record at 540. The administrative law judge was entitled to rely on this conclusion, as well as on the conclusions of the state-agency consultants who reviewed the record and whose reports the administrative law judge cited in support of his decision. *Id*. at 14.

Finally, the plaintiff relies on the opinions of her primary care physician, Dr. Picker. Itemized Statement at [21]-[22]. The administrative law judge adequately stated his reasons for rejecting Dr. Picker's conclusions. Record at 13-14.

The plaintiff is not entitled to remand on this basis.

## Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 30th day of June, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge